**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION**

| | | |
|---|---|---|
| MAURICE FIELDS, | | |
| Movant, | | CIVIL ACTION NO.: 2:20-cv-74 |
| v. | | |
| UNITED STATES OF AMERICA, | | (Case No.: 2:18-cr-48) |
| Respondent. | | |

## REPORT AND RECOMMENDATION

Movant Maurice Fields ("Fields"), who is currently housed at Gilmer Federal

Correctional Institution in Glenville, West Virginia, filed a 28 U.S.C. § 2255 Motion to Vacate,

Set Aside, or Correct Sentence.  Doc. 1.  The Government filed a Response, and Fields filed a

Reply.  Docs. 5, 6.  For the reasons which follow, I **RECOMMEND** the Court **DENY** Fields'

§ 2255 Motion, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate

judgment of dismissal, and **DENY** Fields *in forma pauperis* status on appeal and a Certificate of

Appealability.

## BACKGROUND

Fields was charged and indicted, along with six co-defendants, for: conspiracy to possess

with intent to distribute and to distribute controlled substances, in violation of 21 U.S.C. §§ 846

and 841(a)(1) (count 1); possession with intent to distribute controlled substances, in violation of

21 U.S.C. § 841(a)(1) and (b)(1)(C) (count 2); possession of a firearm in furtherance of a drug

trafficking offense, in violation of 18 U.S.C. § 924(c)(1)(A) (count 3); and possession of a

firearm by a prohibited person, in violation of 18 U.S.C. § 922(g)(1) (count 4).  United States v.

Fields, 2:18-cr-48 (S.D. Ga.) ("Crim. Case"), Doc. 3.  Fields faced a sentence of: not less than 10 years and up to life in prison on the conspiracy charge (count 1); not more than 20 years' imprisonment on the possession charge (count 2); at least five years but not more than life in prison, to be served consecutively to any other imposed sentence, on the possession of a firearm in furtherance of a drug trafficking offense (count 3); and no more than 10 years' imprisonment on the § 922(g)(1) charge (Count 4).  Crim. Case, Doc. 4.  Fields' counsel, John Ossick, filed several motions on Fields' behalf.  Crim. Case, Docs. 98–111.  Fields and Mr. Ossick were able to negotiate a plea agreement with the Government whereby Fields agreed to plead guilty to a lesser included offense of conspiracy charge (count 1) and possession of a firearm in furtherance of a drug trafficking offense (count 3).  Crim. Case, Docs. 134, 167.  In exchange, the Government agreed to: not object to a recommendation Fields receive a three-level reduction for acceptance of responsibility; move the Court to dismiss the remaining counts against Fields; and not file a 21 U.S.C. § 851 enhancement against Fields, if applicable.  Crim. Case, Doc. 167 at 4–5, 10.  The Honorable Lisa Godbey Wood held a change of plea, or Rule 11, hearing.  At the outset of this hearing, Judge Wood informed Fields the purpose of the hearing was to make sure he understood the case pending against him, all the rights he was giving up if Judge Wood accepted his plea, was pleading guilty because that was what he wanted to do after consultation with Mr. Ossick, and there was a factual basis for the plea.  Crim. Case, Doc. 237 at 2–3.  During the plea hearing, Task Force Officer ("TFO") Michael Sapp with the Federal Bureau of Investigation Coastal Georgia Violent Task Force provided the factual basis for the plea, Fields admitted to the truth of Sapp's testimony, Judge Wood accepted Fields' plea, and Judge Wood directed the United States Probation Office to prepare a pre-sentence investigation report

("PSR"). <u>Id.</u> at 27–34. Judge Wood later sentenced Fields to 97 months' imprisonment. Crim. Case, Doc. 220.

Fields has now filed a § 2255 Motion to challenge his sentence. Doc. 1. The Government filed a Response, and Fields filed a Reply. Docs. 5, 6. This matter is fully briefed and ripe for the Court's review.

## DISCUSSION

Fields asserts he was "constructively denied counsel" in violation of his Sixth Amendment rights. Doc. 1 at 4. Fields contends he tried to speak with Mr. Ossick several times about possible defenses to the charged offenses, yet Mr. Ossick would only tell Fields it was in his best interest to accept the plea agreement. Fields states he tried to speak with Mr. Ossick about viable trial strategies prior to entering into the plea agreement, yet Mr. Ossick would not tell Fields about any potential defenses. <u>Id.</u> at 5. In addition, Fields asserts Mr. Ossick told him the Court and the Government would explain everything to him at the change of plea hearing and he would need to show the Court the plea was being entered of his own free will. Fields also asserts he tried to talk to Mr. Ossick about withdrawing his plea, but Mr. Ossick would not consider this and even tried to convince Fields to cooperate with the Government against his co-defendants. <u>Id.</u> at 5–6. Fields further asserts he told Mr. Ossick he wanted to proceed to trial, yet Mr. Ossick "coerced" and "threatened" Fields into pleading guilty. <u>Id.</u> at 6. Fields maintains, had he known about the decisions in <u>United States v. Timmons</u>, 283 F.3d 1246 (11th Cir. 2002), and <u>United States v. Davis</u>, 139 S. Ct. 2319 (2019), he would not have entered into a guilty plea, especially on his § 924(c) charge, and would have exercised his right to proceed to trial. <u>Id.</u>

The Government asserts Fields' guilty plea was voluntarily and knowingly entered. Doc. 5 at 8. The Government observes Fields took an oath to tell the truth at his change of plea hearing and cannot now "escape his sworn statements . . . in an effort to have his conviction vacated by claiming he was unaware of possible defenses and, therefore, coerced." Id. at 11. The Government notes Fields' Timmons- and Davis-based claims are conclusory and without merit and do not entitle him to relief. Id. at 12–13. In the alternative, the Government states neither Timmons nor Davis offered "an assured defense to the charged offenses," and Fields cannot show Mr. Ossick performed deficiently or that Fields suffered any prejudice by counsel's failure to discuss these cases with him. Id. at 13.

## I.     Whether Counsel Rendered Ineffective Assistance

Criminal defendants have a right to effective assistance of counsel at all critical stages of the proceedings. Strickland v. Washington, 466 U.S. 668 (1984). This right extends to the right to proceed to trial, see Carver v. United States, 722 F. App'x 906 (11th Cir. 2018), and also extends to the entry of a guilty plea, Hill v. Lockhart, 474 U.S. 52, 58 (1985).[1]

---

[1]     "In a narrow range of circumstances, however, such as actual or constructive denial of counsel, state interference with counsel's assistance, or actual conflicts of interest, courts presume prejudice to the defendant." Thomas v. United States, 305 F. App'x 587, 588 (11th Cir. 2008) (citing Strickland v. Washington, 466 U.S. 668, 693 (1984)). "In such situations, prejudice is so likely the 'case-by-case inquiry into prejudice is not worth the cost.'" Id. (citation omitted). "In a companion case to Strickland, the Supreme Court held certain circumstances are so likely to prejudice the accused that litigating their effect is not justified: (1) there is a 'complete denial of counsel'; (2) 'counsel entirely fails to subject the prosecution's case to meaningful adversarial testing'; and (3) 'counsel is called on to render assistance under circumstances where competent counsel very likely could not.'" Id. (quoting United States v. Cronic, 466 U.S. 648 (1984)). Fields ostensibly alleges Mr. Ossick was ineffective because he allegedly coerced Fields into entering a guilty plea, constructively denying Fields assistance of counsel. Doc. 1 at 4–6; Doc. 6 at 1. However, as discussed below, Fields' allegations are contradicted by the record. Additionally, Fields makes nothing more than bare assertions regarding constructive denial of counsel and does not make the showing discussed in Cronic. For these reasons, the Court finds the analysis of Fields' contentions more appropriately discussed under Strickland's ineffective assistance/deficient performance-prejudice rubric.

To prevail on a claim of ineffective assistance of counsel, the defendant must demonstrate (1) his counsel's performance was deficient, i.e., the performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result of that deficient performance.  Strickland, 466 U.S. at 685–86.  The deficient performance requirement concerns "whether counsel's advice was within the range of competence demanded of attorneys in criminal cases."  Hill v. Lockhart, 474 U.S. 52, 56 (1985).  There is a strong presumption counsel's conduct fell within the range of reasonable professional assistance.  Davis v. United States, 404 F. App'x 336, 337 (11th Cir. 2010) (citing Strickland, 466 U.S. at 686).  "It is petitioner's burden to 'establish that counsel preformed outside the wide range of reasonable professional assistance' by making 'errors so serious that [counsel] failed to function as the kind of counsel guaranteed by the Sixth Amendment.'"  LeCroy v. United States, 739 F.3d 1297, 1312 (11th Cir. 2014) (quoting Butcher v. United States, 368 F.3d 1290, 1293 (11th Cir. 2004) (alteration in original)).  "Showing prejudice requires petitioner to establish a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. (internal citation omitted).  "The prejudice prong requires a petitioner to demonstrate that seriously deficient performance of his attorney prejudiced the defense."  Id. at 1312–13.  "The likelihood of a different result must be substantial, not just conceivable."  Harrington v. Richter, 562 U.S. 86, 112 (2011).  "In evaluating performance, 'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'"  LeCroy, 739 F.3d at 1312 (quoting Strickland, 466 U.S. at 690).  "If a petitioner cannot satisfy one prong, [a court] need not review the other prong."  Duhart v. United States, 556 F. App'x 897, 898 (11th Cir. 2014).  "The burden of persuasion is on a section 2255 petitioner to prove, by a preponderance of the competent evidence, both that

counsel's performance was unreasonable, and that she was prejudiced by that performance." Demar v. United States, 228 F. App'x 940, 950 (11th Cir. 2007).

"[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland, 466 U.S. at 690. "The cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." James v. Sec'y, Dep't of Corr., No. 8:12-CV-1363, 2013 WL 5596800, at *3 (M.D. Fla. Oct. 11, 2013) (citing Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995)); Body v. United States, Crim. Action No. 10-0232, 2013 WL 2470660, at *20 (S.D. Ala. June 6, 2013) (citing Johnson v. Alabama, 256 F.3d 1156, 1176 (11th Cir. 2001)).

Even if counsel made an error so egregious as to be outside the broad scope of competence expected of attorneys, a movant can obtain relief only if the error caused actual prejudice. Strickland, 466 U.S. at 691–92. In order to establish actual prejudice, a petitioner must show "there is a reasonable probability that but for the attorney's unprofessional errors, the result of the proceeding would have been different." Armstead v. Scott, 37 F.3d 202, 207 (5th Cir. 1994). A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceedings. Strickland, 466 U .S. at 694. "The likelihood of a different result must be substantial, not just conceivable." Harrington v. Richter, 562 U.S. 86, 112 (2011).

After pleading guilty, a defendant can only attack his resulting conviction in "strictly limited" circumstances. Bousley v. United States, 523 U.S. 614, 621 (1998). A § 2255 challenge to a conviction by guilty plea is "ordinarily confined to whether the underlying plea was both counseled and voluntary. If the answer is in the affirmative, then the conviction and the plea, as a general rule, foreclose the collateral attack." United States v. Broce, 488 U.S. 563,

569 (1989) (finding constitutional defendant could not raise double jeopardy claim on collateral attack following guilty plea).  Pertinently, a "knowing and voluntary guilty plea waives all non-jurisdictional, pre-plea defects, including ineffective assistance of counsel with respect to issues not implicating the voluntariness of the plea." Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992).

When a defendant enters a guilty plea pursuant to Rule 11 proceedings, "there is a strong presumption that the statements made during the colloquy are true" and his plea is knowing and voluntary.  United States v. Gonzalez-Mercado, 808 F.2d 796, 800 n.8 (11th Cir. 1987).  "However, a defendant's guilty plea is not knowing and voluntary if he pled guilty on the advice of counsel and that counsel rendered ineffective assistance because his advice was outside of the range of competence demanded of attorneys in criminal cases." United States v. Munguia-Ramirez, 267 F. App'x 894, 897 (11th Cir. 2008) (internal citation omitted).  The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary[,] intelligent choice among the alternative courses open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969).  To determine whether a guilty plea was made knowingly and voluntarily, a court must specifically "address . . . three 'core principles,' ensuring that a defendant (1) enters his guilty plea free from coercion, (2) understands the nature of the charges, and (3) understands the consequences of his plea." United States v. Lambert, 777 F. App'x 336, 339 (11th Cir. 2019) (quoting United States v. Moriarty, 429 F.3d 1012, 1019 (11th Cir. 2005)).  The assistance of counsel received by a defendant is relevant to the question of whether a defendant's guilty plea was knowing and intelligent insofar as it affects the defendant's knowledge and understanding.  Cannon v. Jones, Case No. 3:15CV213, 2017 WL 990583, at *6 (N.D. Fla. Feb. 7, 2017), *report and*

*recommendation adopted*, 2017 WL 988663 (N.D. Fla. Mar. 13, 2017) (citing <u>McMann v. Richardson</u>, 397 U.S. 759, 770–71 (1970)).

In addition, a defendant must live with what he has told a court under oath. A defendant's sworn testimony to the trial judge in open court is presumed to be truthful. In the context of a plea hearing, the United States Supreme Court has stated, "[T]he representations of the defendant . . . at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity." <u>Blackledge v. Allison</u>, 431 U.S. 63, 73–74 (1977). The defendant's representations are presumptively trustworthy and are considered conclusive absent compelling evidence showing otherwise. <u>Id.</u>

### A. Plea Agreement

Fields and Mr. Ossick were able to negotiate a plea agreement with the Government whereby Fields agreed to plead guilty to a lesser included offense of the conspiracy charge (count 1) and to the possession of a firearm during the furtherance of a drug offense (count 3). Crim. Case, Doc. 167 at 1. In exchange, the Government agreed to: not object to a recommendation Fields receive a three-level reduction for acceptance of responsibility; move the Court to dismiss the remaining counts against Fields; and not file a 21 U.S.C. § 851 enhancement against Fields. <u>Id.</u> at 4–5, 10. The plea agreement set forth the statutory elements and factual bases of the offenses to which Fields was pleading guilty. <u>Id.</u> at 1–3. Fields agreed he was guilty of the offenses. <u>Id.</u> at 12. Additionally, Fields agreed no one had promised him a particular sentence or range, and the Court could impose a sentence up to the statutory maximum sentence but would look to the Sentencing Guidelines and sentencing factors of 18 U.S.C. § 3553(a). <u>Id.</u> at 3–4. Further, Fields affirmed he had read and reviewed the agreement with Mr.

Ossick, understood the provisions of the agreement, voluntarily agreed to it, and stipulated to the factual basis as being true and accurate.  Id. at 12.

Fields appeared before Judge Wood for his Rule 11 proceeding.  Judge Wood addressed Fields and informed him the purpose of the hearing was to ensure he understood the case pending against him, he understood all of the rights he was waiving or giving up by pleading guilty, there was a factual basis for the guilty plea, and, after consultation with Mr. Ossick, pleading guilty was what Fields wanted to do.  Crim. Case, Doc. 237 at 2–3.  Judge Wood inquired whether anyone had made, pushed, or leaned on Fields to offer to plead guilty, and he said no one had done so and pleading guilty was what he wanted to do.  Id. at 3–4.

After Fields was sworn in, Judge Wood told Fields he did not have to plead guilty.  Id. at 6.  Judge Wood also told Fields, if he chose to persist in his not guilty plea, he would have the right to: a public and speedy trial by jury; a presumption of innocence that would follow throughout the trial; the assistance of trial counsel; see, hear, confront, and cross-examine the Government's witnesses and evidence; call witnesses on his behalf; and testify himself or remain silent.  Id. at 9–10.  Judge Wood cautioned Fields he would be waiving these rights if he pleaded guilty and Judge Wood accepted that guilty plea.  Id. at 10.  Fields stated he understood and had no questions about the waiver of his rights.  Id.  When Judge Wood asked Fields how far he had gone in school, Fields informed her he completed ninth grade and can read, write, and speak the English language.  Id. at 5.  Judge Wood inquired whether Mr. Ossick and Fields went through the documents involved in the case, including the indictment and plea agreement, and Fields said he and Mr. Ossick had gone over the facts and law of his case, the indictment, and the plea agreement together.  Id. at 11–12.  Fields stated Mr. Ossick had spoken with him in general terms about the advisory Sentencing Guidelines and affirmed he was satisfied with Mr. Ossick's

9

representation.  Id. at 12.  In fact, Fields stated he was satisfied with Mr. Ossick's representation by telling Judge Wood, "I'm good.  I'm just ready to accept my responsibility."  Id.  Fields also stated, in response to Judge Wood's questions about being satisfied with Mr. Ossick's representation, "Yeah, he's good.  He's been good to me.  He's great."  Id.

Judge Wood reviewed the indictment with Fields, the essential elements of the crimes to which he was pleading guilty and the other counts of the indictment naming him, and what the Government would have to prove on the essential elements.  Id. at 12–15.  Judge Wood advised Fields to convict him of the lesser included offense of count 1 of the indictment, the Government would have to prove beyond a reasonable doubt three essential elements: (1) two or more people in some way agreed to try to accomplish a shared and unlawful plan to possess quantities of methylenedioxymethamphetamine ("MDMA") and marijuana, which are both Schedule I controlled substances; (2) Fields knew of the unlawful purpose of this plan and willfully joined it; and (3) the object of the unlawful plan was to possess with the intent to distribute MDMA and marijuana.  Id. at 15.  Judge Wood also advised Fields to convict him of count 3 of the indictment, the Government would have to prove beyond a reasonable doubt: (1) Fields committed the drug trafficking offense of conspiracy with intent to distribute controlled substances, as alleged in count 1; and (2) Fields knowingly possessed a firearm in furtherance of the drug trafficking offense alleged in count 1.  Id.  When Fields stated, "I am willing to accept my responsibility on my behalf of what I did.  I was wrong, but I don't feel it was a drug-trafficking crime and it sure wasn't no conspiracy[,]" Judge Wood reminded Fields he had the right to go to trial.  If he wanted to do that, she would call an end to the plea hearing and schedule a trial.  Id. at 16.  Mr. Ossick and Fields had a discussion, and Mr. Ossick asked Judge Wood to inquire again of Fields.  Judge Wood reminded Fields it was entirely up to him, with the

advice of counsel, whether he wanted to plead guilty to the crimes of conspiracy and possession of a firearm in furtherance of a drug trafficking offense.  Id. at 16–17.

By pleading guilty, Judge Wood noted Fields was admitting the essential elements of the crimes to which he intended to plead guilty were satisfied without further proof from the Government.  Id. at 17.  Judge Wood advised Fields of the maximum sentence she could impose, which was not more than 20 years in prison on count 1 and at least five years and up to life, to run consecutively to any sentence imposed on count 1, on count 3.  Id. at 17–18.  Moreover, Judge Wood explained to Fields, in imposing a sentence upon him, she would have to take into consideration the advisory Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553. Id. at 19.  Judge Wood also stated she would consider some "major factors," including Fields' criminal history, his role in the offense, and whether he told the truth and accepted responsibility. Id. at 19–20.  Fields stated he understood and had no questions.  Id. at 20.  Judge Wood inquired whether anyone had promised Fields an exact sentence, and Fields stated no one had, to which Judge Wood responded that was good because all anyone could provide Fields was his "best guess," which was not binding upon her.  Id.  Fields verified Mr. Ossick had his permission to negotiate with the United States to reach a plea agreement.  Id.

Judge Wood asked the Assistant United States Attorney ("AUSA") to summarize the provisions of the plea agreement.  AUSA Jennifer Kirkland stated the material provisions were:

> Defendant will plead guilty to the lesser included offense of Count 1, that is, a quantity of MDMA and a quantity of marijuana[,] as well as Count 3 of the indictment.  The Government will not object to a recommendation by the [U.S.] Probation Office that he receive an appropriate reduction in his offense level for his acceptance of responsibility.  He agrees to forfeit his interest in the firearm that's referenced in the indictment.  At sentencing, the Government will move to dismiss any remaining counts that remain pending against the defendant.

> He waives his right to appeal on any ground and with limited exceptions. He also waives his right to collaterally attack his conviction and sentence on any ground with one limited exception.

> He waives his rights to request information about the investigation and prosecution of his case under the Freedom of Information Act or the Privacy Act. He further waives protections of Rule 11(f) of the Federal Rules of Criminal Procedure and Rule 410 of the Federal Rules of Evidence.

> If he fails to plead guilty or later withdraws his guilty plea, all statements made by him in connection with that plea and any leads therefrom shall be used for any and all purposes.

> The Government agrees not to file a United States Code 851 enhancement against this defendant.

Id. at 20–21.  Judge Wood asked Fields if AUSA Kirkland's summarization of the plea agreement was consistent with the plea agreement he signed, and he stated it was.  Id. at 22. Fields also stated he read the plea agreement before he signed it, and Fields affirmed no one had made him any promises regarding the outcome of his case, other than the provisions contained in the plea agreement.  Id.  Judge Wood also discussed the appeal waivers contained in the plea agreement, including the limited exceptions if: she were to sentence Fields above the statutory maximum; she were to sentence Fields above the advisory Guidelines range, as found by her; and the Government were to file a direct appeal.  Id. at 22–23.  When Fields asked whether he could appeal if, "for instance, if like any lie of the GBI [Georgia Bureau of Investigation] was on my case, can I come back to court for that?", Judge Wood again informed Fields of the three situations where he could file a direct appeal.  Id. at 23.  Judge Wood also noted the plea agreement contained a collateral rights waiver, which stated, "Defendant entirely waives his right to collaterally attack her conviction and sentence on any ground and by any method[,] including but not limited to a 28 [U.S.C. §] 2255 motion.  The only exception to that waiver of collateral

attack . . . is you retain the right to collaterally attack based on a claim of ineffective assistance of counsel." Id. at 24.

Judge Wood reiterated Fields may have defenses available or complaints about the GBI, but he would waive these matters if he pleaded guilty, which was his choice, and she accepted that plea. Id. at 24–25. Judge Wood then asked Fields whether he wished to still plead guilty to the lesser included offense of count 1 and to count 3 of indictment because he was in fact guilty of those counts, and he answered in the affirmative. Id. at 26. Judge Wood also asked Fields whether he understood the rights and privileges he was waiving if she accepted his plea, and Fields said he did. Id. Judge Wood specifically found Fields had an understanding of what he was pleading guilty to, the essential elements of those offenses, the rights he waived, and the possible sentences he faced for each offense. Id. at 27. Judge Wood determined Fields' offer to plead guilty was made "knowing[ly]" and "voluntar[ily]." Id. Fields agreed. Id.

The Government provided a factual basis for Fields' plea of guilty by calling TFO Sapp to testify. Id. TFO Sapp testified he was involved in an investigation into drug trafficking in the Brunswick, Georgia area from October 2017 through November 2018. Id. at 28. TFO Sapp stated law enforcement officials used surveillance, search warrants, wiretaps, confidential informant information, and controlled buys during the course of this investigation. Id. at 28–29. Law enforcement officials identified several people involved in a conspiracy to sell several types of controlled substances, including Fields, whose telephone was a target telephone for the wiretap. Id. at 29. Several calls from Fields' phone were intercepted, and a few people were identified as being suppliers of marijuana or Molly (MDMA) to Fields. Id. at 30. TFO Sapp detailed Fields would order an ounce of either drug, and the suppliers would deliver to him, or "dozens of drug customers" would call Fields to order smaller amounts and would go to his

house.  TFO Sapp also noted law enforcement conducted surveillance on Fields' home using physical surveillance and a pole camera directed on his house, and this surveillance revealed consistency "with the phone calls we were intercepting where [Fields] had multiple customers every day several per hour coming to his house to purchase drugs."  Id. at 31.  TFO Sapp also noted law enforcement officials conducted a search of Fields' home, which yielded marijuana and what was believed to be MDMA, but was actually bath salts, which Fields was selling as MDMA or Molly, and a firearm.  Id. at 31–32.  In a post-arrest interview, Fields admitted the firearm was his (or was in his house).  Id. at 32.  Fields admitted to the truth of TFO Sapp's testimony.  Id. at 33.  Judge Wood was "satisfied" there was a factual basis for a plea, accepted Fields' plea, and adjudged him guilty of the lesser included offense of count 1 and of count 3 of the indictment.  Id.  Judge Wood advised Fields a probation officer would prepare a PSR, and the Court would schedule a sentencing hearing after the PSR was disclosed to the Government and to Mr. Ossick.  Id. at 34.

To be clear, Judge Wood informed Fields at the outset of the initial Rule 11 hearing that the purpose of the hearing was to ensure he understood the case pending against him, the rights he was waiving by pleading guilty, the factual basis for his plea, and whether pleading guilty was what Fields wanted to do after consultation with his attorney.  Id. at 2–3.  After telling Fields he would be asked to swear under penalty of perjury to tell the truth at his Rule 11 hearing or the Government could prosecute him for perjury, Fields stated no one was forcing him to plead guilty and pleading guilty was what he wanted to do.  Id. at 3.  Judge Wood discussed the specific rights Fields was afforded if he chose to persist with a not guilty plea, and Judge Wood advised Fields he would waive those rights if he pleaded guilty and Judge Wood accepted his plea.  Id. at 9–10.  Fields stated he had spoken with Mr. Ossick about the facts and law of his

case, including the plea agreement, indictment, and the sentencing Guidelines in general terms. <u>Id.</u> at 11–12. Fields verified AUSA Kirkland's summary of the plea agreement was consistent with the plea he had signed. <u>Id.</u> at 22. Judge Wood asked Fields whether he wanted to plead guilty because he was, in fact, guilty of a lesser included offense of count 1 and of count 3 of the indictment, and he answered in the affirmative. Fields declared he understood the rights and privileges he was waiving by pleading guilty and proceeded to do so. Judge Wood determined Fields' guilty plea was knowing and voluntary. <u>Id.</u> at 27. TFO Sapp then provided a factual basis for Fields' plea, and Fields agreed with the Government's factual basis. <u>Id.</u> at 33. Judge Wood accepted Fields' plea and adjudged him guilty of the lesser included offense of count 1 and of count 3 of the indictment. <u>Id.</u> In so doing, Judge Wood addressed the "three core principles" required during a Rule 11 hearing. <u>Lambert</u>, 777 F. App'x at 339.

Fields' assertion Mr. Ossick was ineffective during the plea phase for coercing him into pleading guilty is belied by the record before the Court and is without merit. Fields stated during the plea hearing no one was forcing, leaning on, or coercing him to plead guilty. The record before the Court, including the statements Fields made under oath and under penalty of perjury, belies Fields' contentions in his Motion as to Mr. Ossick's assistance during the plea process. Either Fields is being untruthful now or was being untruthful when he appeared before Judge Wood for his change of plea hearing; in either event, Fields; contentions are without merit. Thus, Fields has not satisfied both <u>Strickland</u> prongs. For these same reasons, to the extent Fields makes any argument Mr. Ossick's alleged ineffective assistance rendered his plea unknowing and involuntary, Fields' putative assertions fail. As discussed, Judge Wood specifically found Fields' plea was knowing and voluntary, and Fields offers nothing to refute

this finding.  Fields is not entitled to his requested relief, and the Court should **DENY** this portion of his Motion.

### B.       Decision to Plead Guilty in Lieu of Trial

Fields also contends he would not have entered into a plea agreement and would have proceeded to trial if Mr. Ossick had informed him of the decisions in Timmons and Davis. Doc. 1 at 6.  Fields states he was coerced into pleading guilty to a statute that has been declared unconstitutionally vague, § 924(c).  Id.  In his Reply, Fields states Bailey v. United States, 516 U.S. 137 (1995), would have provided a "sound strategic defense[.]"  Doc. 6 at 4.

When "a defendant alleges his counsel's deficient performance led him to accept a guilty plea rather than go to trial, we do not ask whether, had he gone to trial, the result of that trial 'would have been different' than the result of the plea bargain."  Lee v. United States, 137 S. Ct. 1958, 1965 (2017).  "Instead, when a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial."  Spriggs v. United States, 703 F. App'x 888, 890 (11th Cir. 2017) (internal citation and punctuation omitted).  A movant "alleging prejudice with respect to the plea process must demonstrate a reasonable probability that he would have gone to trial rather than enter the plea, but for counsel's errors."  Martinez v. Sec'y, Fla. Dep't of Corr., 684 F. App'x 915, 922 (11th Cir. 2017) (citing Lafler v. Cooper, 566 U.S. 156, 163 (2012)).  "Further, the decision to reject the plea must have been 'rational under the circumstances.'"  Id. (quoting Padilla v. Kentucky, 559 U.S. 356, 372 (2010)).  In a plea situation, the focus of inquiry under the performance prong of Strickland is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'"  Hill,

474 U.S. at 56–57 (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)).  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Cannon, 2017 WL 990583, at *10 (citing Strickland, 466 U.S. at 689).

The Eleventh Circuit Court of Appeals' decision in Timmons involved the version of § 924(c) Congress passed in response to the Bailey decision.  283 F.3d at 1249.  This version read (and still reads) as:

> Except to the extent that a greater minimum sentence is otherwise provided by this subsection or by any other provision of law, any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime—
>
> (i) be sentenced to a term of imprisonment of not less than 5 years[.]

Id. (quoting § 924(c)(1)(A)(i)).  The Eleventh Circuit found sufficient evidence supported Timmons' convictions under this statute because he had used or carried handguns on two separate occasions during and in relation to and in furtherance of drug trafficking crimes.  Id. at 1249–50.

A jury would have had ample reasons to conclude the firearm found in Fields' bedroom during the search of his home was possessed in furtherance of a drug trafficking offense.  The firearm was: found close to controlled substances, in Fields' bedroom, and loaded with eight rounds of ammunition in an extended magazine; there was another extended magazine found in his bedroom; and marijuana, suspected MDMA (later determined to be bath salts), multiple drug scales, and drug residue were also found in Fields' bedroom.  Crim. Case, Doc. 237 at 32; PSR,

¶¶ 9–11.  In addition, Fields was intercepted on wiretaps as admitting to having a firearm when he was told of threats from others.  PSR, ¶ 17.  There is nothing in the Timmons decision which would have provided a viable defense to Fields, and Mr. Ossick cannot be said to have rendered ineffective assistance by failing to bring this decision to Fields' attention.  What is more, the Bailey decision was overruled by statute, as the Eleventh Circuit observed in Timmons and the Supreme Court recognized in Welch v. United States, 578 U.S. 120, 133 (2016).  Bailey certainly would not have provided Fields with any defense to the firearm offense.

In Davis, the Supreme Court "extended its holdings in Johnson v. United States, [576 U.S. 591] (2015), and Sessions v. Dimaya, 138 S. Ct. 1204 (2018), to § 924(c) and held that § 924(c)(3)(B)'s residual clause, like the residual clauses in the Armed Career Criminal Act and 18 U.S.C. § 16(b), is unconstitutionally vague."  In re Navarro, 931 F.3d 1298, 1301 (11th Cir. 2019) (citing Davis, 139 S. Ct. at 2324–25, 2336).  However, in Davis, the Supreme Court left undisturbed the elements clause of § 924(c).  139 S. Ct. at 2323–36.  "Therefore, if the predicate felony for a § 924(c) conviction qualifies as a crime of violence under the elements clause, that conviction is valid even after Davis."  Weaver v. United States, CV119-142, CR114-030, 2020 WL 6325724, at *7 (S.D. Ga. Oct. 2, 2020), report and recommendation adopted, 2020 WL 6325703 (S.D. Ga. Oct. 28, 2020).  As Fields was charged and pleaded guilty to possession of a firearm in furtherance of a drug trafficking offense, § 924(c)(1)(A)(i) is the applicable statute, not § 924(c)(3)(B).  Davis is not applicable and would have provided Fields with no viable defense to any of the charged offenses.

Adding to this, without benefit of the plea agreement, Fields would have faced a mandatory minimum sentence of 10 years and up to life in prison on the conspiracy count alone.  Crim. Case, Doc. 4 at 2.  Instead, by virtue of his plea agreement, Fields was sentenced to only

37 months on a lesser included count.  Crim. Case, Doc. 220 at 2.  Any decision to not accept the favorable plea terms would not have been rational under the circumstances of this case. _Martinez_, 684 F. App'x at 922.[2]  In short, Mr. Ossick did not provide ineffective assistance to Fields by failing to bring the decisions in _Bailey_, _Timmons_, or _Davis_ to his attention.  The Court should also **DENY** this portion of Fields' § 2255 Motion.

## II.   Leave to Appeal _in Forma Pauperis_ and Certificate of Appealability

The Court should also deny Fields leave to appeal _in forma pauperis_.  Though Fields has not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal.  Fed. R. App. P. 24(a)(3) (trial court may certify appeal of party proceeding _in forma pauperis_ is not taken in good faith "before or after the notice of appeal is filed").  An appeal cannot be taken _in forma pauperis_ if the trial court certifies the appeal is not taken in good faith.  28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3).  Good faith in this context must be judged by an objective standard.  _Busch v. County of Volusia_, 189 F.R.D. 687, 691 (M.D. Fla. 1999).  A party does not proceed in good faith when he seeks to advance a frivolous claim or argument.  _See_ _Coppedge v. United States_, 369 U.S. 438, 445 (1962).  A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless.  _Neitzke v. Williams_, 490 U.S. 319, 327 (1989); _Carroll v. Gross_, 984 F.2d 392, 393 (11th Cir. 1993).  Thus, a claim is frivolous and not brought in good faith if it is

---

[2]    By extension, Fields' contention he asked Mr. Ossick about the withdrawal of the plea after the Rule 11 hearing does not amount to a showing of a _Strickland_ violation.  At best, Fields' contention reveals Mr. Ossick provided advice about a strategic decision and Fields disagreed with that advice. However, this Court cannot now accept Fields' _post hoc_ allegations when the plea colloquy reveals he was satisfied with Mr. Ossick's representation and the Court's finding Fields' decision to plea guilty was knowing and voluntary.  What is more, Fields provides no reasonable basis for an alleged desire to withdraw his guilty plea.  _See_ _United States v. Caldwell_, 805 F. App'x 743, 745–46 (11th Cir. 2020) (noting a defendant has the burden to show a "fair and just reason for requesting the withdrawal.") (citing Fed. R. Cr. P. 11(d)(2)(A)–(B)).

"'without arguable merit either in law or fact.'"  Moore v. Bargstedt, 203 F. App'x 321, 323

(11th Cir. 2006) (quoting Bilal v. Driver, 251 F.3d 1346, 1349 (11th Cir. 2001)); see also Brown

v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9,

2009).

Additionally, under 28 U.S.C. § 2253(c)(1), an appeal cannot be taken from a final order

in a habeas proceeding unless a certificate of appealability is issued.  Pursuant to Rule 11 of the

Rules Governing Section 2255 cases, the Court "must issue or deny a certificate of appealability

when it enters a final order adverse to the applicant."  A certificate of appealability may issue

only if the applicant makes a substantial showing of a denial of a constitutional right.  The

decision to issue a certificate of appealability requires "an overview of the claims in the habeas

petition and a general assessment of their merits."  Miller-El v. Cockrell, 537 U.S. 322, 336

(2003).  In order to obtain a certificate of appealability, a petitioner must show "that jurists of

reason could disagree with the district court's resolution of his constitutional claims or that

jurists could conclude the issues presented are adequate to deserve encouragement to proceed

further."  Id.  "Where a plain procedural bar is present and the district court is correct to invoke it

to dispose of the case, a reasonable jurist could not conclude either that the district court erred in

dismissing the petition or that the petitioner should be allowed to proceed further."  Slack v.

McDaniel, 529 U.S. 473, 484 (2000); see also Franklin v. Hightower, 215 F.3d 1196, 1199 (11th

Cir. 2000).  "This threshold inquiry does not require full consideration of the factual or legal

bases adduced in support of the claims."  Miller-El, 537 U.S. at 336.

Based on the above analysis of Fields' Motion and the Government's Response and

applying the Certificate of Appealability standards set forth above, there are no discernable

issues worthy of a certificate of appealability; therefore, the Court should **DENY** the issuance of

a Certificate of Appealability.  If the Court adopts this recommendation and denies Fields a Certificate of Appealability, Fields is advised she "may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22."  Rule 11(a), Rules Governing Section 2255 Cases in the United States District Courts.  Furthermore, as there are no non-frivolous issues to raise on appeal, an appeal would not be taken in good faith.  Thus, the Court should likewise **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

For the above-stated reasons, I **RECOMMEND** the Court **DENY** Fields' § 2255 Motion, **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal, and **DENY** Fields *in forma pauperis* status on appeal and a Certificate of Appealability.

Any objections to this Report and Recommendation shall be filed within 14 days of today's date.  Objections shall be specific and in writing.  Any objection that the Magistrate Judge failed to address a contention raised in the Complaint must be included.  Failure to file timely, written objections will bar any later challenge or review of the Magistrate Judge's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C); Harrigan v. Metro Dade Police Dep't Station #4, No. 17-11264, 2020 WL 6039905, at *4 (11th Cir. Oct. 13, 2020).  To be clear, a party waives all rights to challenge the Magistrate Judge's factual findings and legal conclusions on appeal by failing to file timely, written objections.  Harrigan, 2020 WL 6039905, at *4; 11th Cir. R. 3-1.  A copy of the objections must be served upon all other parties to the action.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a de novo determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in

whole or in part, the findings or recommendations made by the Magistrate Judge.  Objections not

meeting the specificity requirement set out above will not be considered by a District Judge.  A

party may not appeal a Magistrate Judge's report and recommendation directly to the United

States Court of Appeals for the Eleventh Circuit.  Appeals may be made only from a final

judgment entered by or at the direction of a District Judge.

**SO REPORTED and RECOMMENDED**, this 31st day of May, 2022.


BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA